**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO. 08-024** |
| **VERSUS** | * | **JUDGE JAMES** |
| **JOSEPH E. ROBINSON** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress filed by defendant Joseph Robinson. (Doc. #23). Robinson argues that his Fourth Amendment rights were violated during a July 30, 2007, traffic stop of his vehicle by an officer of the Louisiana State Police Department ("LSPD"). Robinson challenges the legality of the stop itself, as well as the subsequent detention, search of the vehicle, and his arrest. Since the LSPD trooper had probable cause via the collective knowledge doctrine, it is recommended that Robinson's motion be **DENIED**.

## BACKGROUND

During the months preceding his arrest, Robinson was the subject of a narcotics investigation conducted jointly by the LSPD and the Madison Parish Sheriff's Department. (Tr. p. 3-9).[1] LSPD Troopers Randy Almond and Chris Jordan, members of the LSPD narcotics unit, were among the officers investigating and surveilling Robinson. (Tr. p. 3-9, 16). The narcotics unit surveilled Robinson as he made a series of controlled sales of crack cocaine to a confidential informant ("CI") in June 2007. (Tr. p. 3-9). The troopers used numerous techniques and precautions in monitoring the sales: They recorded phone calls to Robinson, used electronic

---

[1] The transcript from the hearing held May 2, 2008, will be cited in this manner.

monitoring equipment to monitor the transactions, searched the CI's vehicle before and after the purchases, followed the CI to and from the purchases, and debriefed the CI afterward.  (Tr. p. 5-7).

On the day of Robinson's arrest, law enforcement learned that he had exhausted his supply of crack cocaine and that he was planning to obtain more.  (Tr. p. 7).  Law enforcement followed Robinson in both air and ground units as he drove from Tallulah, Louisiana, to a residence in Monroe, Louisiana.  (Tr. p. 7-10).  They watched Robinson enter the residence and saw him leave approximately eight minutes later.  (Tr. p. 9).  When Robinson exited the residence, he was carrying a package that he placed in the back of the interior of his truck.  (Tr. p. 9).  The officers concluded, based on the above knowledge and their experience, that the circumstances of Robinson's trip indicated that the package contained illegal narcotics.  (Tr. p. 9-10).

Consequently, Jordan contacted LSPD Trooper Michael Bickford  (Tr. p. 10, 13).  Jordan informed Bickford that law enforcement had watched Robinson drive to Monroe and that they had credible information that he had purchased illegal narcotics that were presently in his vehicle.  (Tr. p. 17-19, 34, 53).  Jordan asked Bickford to locate and stop Robinson's truck.  (Tr. p. 14, 36).  Hoping to avoid revealing the extent of the investigation to Robinson, Jordan asked Bickford to use a basis other than the narcotics investigation to make the stop.  (Tr. p. 14, 36).  Jordan told Bickford that Robinson's vehicle had a modified exhaust pipe and illegally tinted windows.  (Tr. p. 53).  Jordan instructed Bickford to attempt to obtain Robinson's consent to search the truck and that a drug-detecting dog was ready in case it was needed.  (Tr. p. 41).

Jordan did not expressly ask Bickford to place Robinson under arrest.[2]  (Tr. p. 41).

Bickford located Robinson's truck and observed as it followed too closely behind another vehicle.  Bickford also saw the illegal tint and exhaust.  (Tr. p. 36-38).  Bickford conducted the traffic stop as requested.  (Tr. p. 37).  He informed Robinson that he had stopped him based on the tinted window and modified exhaust, and also because Bickford had observed Robinson following too closely behind another vehicle.  (Def. Ex. C).[3]  Bickford issued a citation to Robinson for the illegal tint and issued a verbal warning regarding the exhaust and for following too closely.  (Def. Ex. C).

After issuing the citation, Bickford began to question Robinson about the contents of his truck.  (Def. Ex. C).  He asked Robinson for permission to search the truck.  (Def. Ex. C).  Robinson refused to consent to the search and informed Bickford that he would have to bring a drug-detecting dog instead.  (Def. Ex. C).  It took approximately 30 minutes from the point at which Bickford issued the citation until the drug-detecting dog arrived on the scene.  (Def. Ex. C).  The dog's handler had the dog sniff around the exterior of Robinson's truck.  (Def. Ex. C).  The dog alerted the officers to the presence of narcotics within the truck.  (Tr. p. 39).  Bickford and another officer then searched the truck.  (Def. Ex. C).  Shortly thereafter, the officers located crack cocaine inside the vehicle.  (Tr. p. 39).  Bickford immediately placed Robinson under

---

[2] After the stop, search, and subsequent arrest, Jordan asked Bickford to refrain from discussing in his report the narcotics unit's involvement in the arrest.  (Tr. p. 53-54).  Bickford complied; his report only mentions the independent bases for the traffic stop.  (Def. Ex. B).  Notwithstanding these facts, the undersigned finds that Jordan did communicate with Bickford prior to the stop and that said communication was the underlying motivation for Bickford's decision to stop the vehicle.

[3] The defendant's exhibits entered into evidence at the May 2, 2008, hearing will be cited in this manner.

arrest.  (Tr. p. 39); (Def. Ex. C).

Robinson filed the instant motion to suppress on April 4, 2008.  The undersigned conducted a hearing on the matter on May 2, 2008.  At the hearing, Troopers Almond, Jordan, and Bickford testified.  In addition, the defense entered into evidence three exhibits: (A) an Affidavit of Probable Cause regarding the incident; (B) a Criminal Arrest Report from the incident; and (C) a DVD containing footage of the stop, detention, search, and arrest.

## LAW AND ANALYSIS

In light of the above stated facts, the question presented is whether Bickford violated Robinson's rights under the Fourth Amendment when he conducted the traffic stop, detained Robinson, searched his truck, and arrested him.  Affecting this inquiry is the uncontested fact that Bickford had no personal knowledge of the narcotics investigation of Robinson.  Given Fifth Circuit precedent, however, such personal knowledge is not required.  Instead, by virtue of the collective knowledge doctrine, Bickford had probable cause to stop, detain, and arrest Robinson, and to search Robinson's truck.

### I.      The Traffic Stop

"A police officer may make an investigative stop of an individual if he reasonably suspects that the individual is involved in criminal activity."  *United States v. Allison*, 616 F.2d 779, 782 (5th Cir. 1980).  "Reasonable suspicion may exist on the collective knowledge of the police when there is reliable communication between the officer supplying the information and the officer acting on that information."  *Id.*; *accord United States v. Shaw*, 701 F.2d 367, 377 n.4 (5th Cir. 1983) (reasonable suspicion to conduct a *Terry* stop is to be considered by the totality of circumstances, including the collective knowledge of all officers involved in the investigation).

4

Here, Bickford observed Robinson follow too closely behind another vehicle. In addition, he saw that the windows on Robinson's truck had tint darker than allowed by Louisiana law and that Robinson's truck had an illegally modified exhaust. Those observations gave Bickford the reasonable suspicion necessary to stop Robinson's truck. Since Jordan had told Bickford of his surveillance and that he had credible reason to believe that Robinson had cocaine in his truck, Bickford also had at the very least reasonable suspicion on this basis. As a result, the traffic stop did not violate Robinson's Fourth Amendment rights.[4]

## II.     The Detention

"[T]he Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). If an officer has probable cause to arrest a suspect, the officer's lengthy detention of the suspect does not constitute an unreasonable seizure under the Fourth Amendment. *See United States v. Williams*, 124 Fed. App'x 885, 887 (5th Cir. 2005); *United States v. Pompa*, 434 F.3d 800, 805 n.3 (5th Cir. 2005) ("Because we find probable cause to arrest existed . . . we need not consider appellants' arguments that the . . . officers' actions constituted an investigatory stop that developed into an unlawful arrest.").

"Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude

---

[4] Where, as here, the officer had an ulterior motive for the stop, such motive does not render the stop unconstitutional. *See United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003) ("the constitutional reasonableness of the stop does not depend upon the actual motivations of the officer involved. An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses."). As a result, the traffic stop of Robinson's vehicle did not violate the Fourth Amendment.

that the suspect had committed or was committing an offense.' " *Scallion v. Norman*, 251 Fed. App'x 853, 855 (5th Cir. 2007) (unpublished) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)).  " '[P]robable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest,' when there is 'some degree of communication between the two.' " *United States v. Webster*, 750 F.2d 307, 323 (5th Cir. 1984) (quoting *United States v. Ashley*, 569 F.2d 975, 983 (5th Cir.  1978)); *accord United States v. Butler*, 611 F.2d 1066, 1070 n.11 (5th Cir. 1980) ("Collective knowledge rather than the sole knowledge of any individual officer is the factor to be considered when determining the existence of probable cause.").  Under Fifth Circuit precedent, the collective knowledge doctrine applies such that even "if the arresting officer has no personal knowledge of any of the facts establishing probable cause, he may make an arrest in carrying out directions from another officer who does have probable cause." *Charles v. Smith*, 894 F.2d 718, 724 (5th Cir. 1990).

In *United States v. Ibarra*, 493 F.3d 526, 529-31 (5th Cir. 2007), a case cited by the defendant, the Fifth Circuit considered the communication between officers to determine whether it was sufficient for the collective knowledge doctrine to apply.  In *Ibarra*, law enforcement personnel investigating a suspected narcotics trafficker, contacted an officer of the Texas Department of Public Safety ("DPS"):

> Trooper McGuairt of DPS received the call from Lieutenant Rawls to be on the lookout for the subject trailer. He was provided a license plate number and description of the trailer's logo. McGuairt was instructed to pull the truck over if the driver violated any traffic laws. He was also instructed that if he developed reasonable suspicion of criminal activity, he was to try to obtain consent to search.

*Id.* at 529.   The court held that this communication was sufficient for the collective knowledge doctrine to apply.  *Id.* at 531; *see also Moreno-Vallejo v. United States*, 414 F.2d 901, 904 (5th

6

Cir. 1969) (informing the "some degree of communication" language by contrasting it with "a frolic" by the arresting officer acting absent the requisite communication).

Here, Almond and Jordan had probable cause to arrest Robinson. They had personal knowledge of several instances in which Robinson had sold crack cocaine to a confidential informant. In addition Jordan had recently observed Robinson behave in a manner that would reasonably cause him to believe that Robinson had purchased and possessed cocaine. Furthermore, Jordan's communication with Bickford was sufficient to satisfy the requirements of the collective knowledge doctrine. Jordan contacted Bickford and told him to locate Robinson's vehicle, to conduct a traffic stop based on traffic violations rather than the ongoing investigation, and to seek consent to search the vehicle. As that degree of communication was sufficient in *Ibarra*, the undersigned concludes that it suffices here as well. Thus, Bickford's detention of Robinson did not violate the Fourth Amendment.[5]

### III.     The Search

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Thus, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991). One such

---

[5] It is worth noting that Bickford was not constitutionally required to arrest Robinson as soon as he had probable cause to do so. *Butler*, 611 F.2d at 1070. Indeed, "police are under no obligation to make arrests as soon as probable cause exists." *Id.* (citing *Hoffa v. United States*, 385 U.S. 293 (1966)). Consequently, the fact that officer Bickford opted to wait for a drug-detecting dog to arrive on the scene, rather than arresting Robinson immediately, does not alter this court's conclusion.

exception that is "specifically established and well-delineated" is the so-called automobile exception.  *United States v. Ross*, 456 U.S. 798, 825 (1982).  "The automobile exception allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband."  *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006) (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999)).  "[T]he automobile exception does not have a separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.' "  *Dyson*, 527 U.S. at 467 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)).  "[I]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  *Ross*, 456 U.S. at 825.

"Probable cause to search an automobile exists where 'trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband.' "  *United States v. Castelo*, 415 F.3d 407, 412 (5th Cir. 2005) (quoting *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)).  The collective knowledge doctrine, discussed above, can also provide the probable cause necessary for the automobile exception to apply.  *United States v. De Los Santos*, 810 F.2d 1326, 1336 (5th Cir. 1987) (citing *United States v. Mendoza*, 722 F.2d 96, 100 (5th Cir.1983) ("if . . . police officers, through their collective knowledge, had probable cause to believe that contraband was contained in [the] vehicle, their warrentless search . . . was lawful.")).  In determining whether probable cause exists, "each individual layer of information is not to be weighed.  Rather the 'laminated total' of the facts available is the source of the justification for a vehicle search."

*Castelo*, 415 F.3d at 412 (citing *Edwards*, 577 F.2d at 885). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Wyo. v. Houghton*, 526 U.S. 295, 302 (1999) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

In this case, Bickford had probable cause to believe Robinson's truck contained contraband for two reasons. First, Bickford had probable cause under the collective knowledge doctrine. Jordan and Almond developed probable cause to believe that Robinson had narcotics in his truck based on the history of their investigation, the report from the CI, and their surveillance of Robinson as he drove to Monroe and only briefly entered a residence, only to exit with a package. When Jordan communicated with Bickford and told him that he had credible information that the truck had narcotics in it, this communication was sufficient for the collective knowledge doctrine to apply. Second, Bickford developed independent probable cause once the drug-detecting dog sniffed Robinson's car and indicated the presence of narcotics therein. *See United States v. Moore*, 329 F.3d 399, 404 (5th Cir. 2003) ("a dog sniff of a vehicle is not a Fourth Amendment 'search' . . . [t]he results of the dog sniff [can give] the officers probable cause to search [the] car."). Since Bickford had probable cause to search Robinson's truck, the search fell within the automobile exception and therefore neither it nor the resulting arrest violated the Fourth Amendment.

In lieu of filing a post-hearing brief, the defendant cited three cases in support of his argument that the collective knowledge doctrine does not properly apply in this case. The undersigned has reviewed the cases and concluded that they are consistent with this report

and recommendation.  In only one of the cases cited, *Webster*, 750 F.2d 307, did the court hold that the collective knowledge doctrine was not applicable.[6]  *Webster*, however, is readily distinguishable from the case at bar.  In *Webster*, the court held that even where a police officer with probable cause to arrest an individual communicates with a second officer, the second officer still does not have probable cause to arrest an *unidentified* person who merely happened to be in the vicinity of the criminal activity hours after it occurred.  *Id.* at 323-24.  As Bickford had identified Robinson before the detention, search, and arrest, (Tr. p. 37-38), *Webster* does not support the conclusion that the collective knowledge does not apply in this case.

## IV.   Conclusion

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

---

[6] The other cases cited by defense counsel are *United States v. Lee*, 962 F.2d 430 (5th Cir. 1992), and *Ibarra*, 493 F.3d 526.

10

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

**THUS DONE AND SIGNED** this 13th day of May, 2008, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

11